## SMITH *v.* HUBBELL.

1. LIBEL AND SLANDER —ACTION — EVIDENCE — PRIOR TRANSAC-
TIONS.

> In an action for libel in publishing strictures upon plaintiff's
> management of certain matters as village attorney, questions
> concerning plaintiff's management of other matters for the
> village and its officers some three years earlier, and in no way
> connected with the matter under investigation, are immate-
> rial, and questions to plaintiff concerning them, on cross-ex-
> amination, are properly excluded within the discretion of the
> trial court.

2. SAME—EVIDENCE—STRIKING OUT—PROPRIETY.

> Testimony relative to plaintiff's subsequent employment ad-
> versely to the interests of the village, admitted on counsel's
> promise to connect it by other testimony with the time un-
> der consideration, is properly stricken from the record on
> failure to so connect it.

3. SAME—EVIDÉNCE — LOSS OF BUSINESS — REFUSAL TO STRIKE—
PROPRIETY.

Testimony by plaintiff that his business fell off after the publi-
cation complained of, justifies refusal to strike out all testi-
mony relative to loss of business.

4. SAME—INSTRUCTIONS—JUSTIFICATION.

Where the evidence is such that the court might have told the
jury that there was none to support defendant's plea of justi-
fication, defendant has no ground of complaint respecting
the instructions on that question.

5. SAME.

Where a charge of perjury in making an affidavit filed with
a claim for services against a village could be sustained only
in case the affiant falsely stated that the services were ren-
dered for the village, the giving of an ambiguous instruction
upon that question is not error available to defendant where
another instruction fully presents the theory of justification
in case the affiant knew the affidavit was false in that re-
spect.

Error to Lapeer; Smith, J. Submitted November 20,
1907. (Docket No. 123.) Decided January 31, 1908.

Case by Herbert W. Smith against Albion W. Hubbell
for libel. There was judgment for plaintiff, and defend-
ant brings error. Affirmed.

*Elmer Shumar* and *R. L. Campbell*, for appellant.

*Geer, Williams & Halpin*, for appellee.

HOOKER, J. This cause was before us in the January,
1906, term, and has since been tried a second time, being
again appealed by the defendant. We refer to our opin-
ion on the former hearing for an outline of the case, and
do not repeat it here. See *Smith* v. *Hubbell*, 142 Mich.
637.

Counsel for defendant group the assignments of error
as follows:

" (1) The refusal to allow certain questions which were
asked plaintiff upon cross-examination.

" (2) Striking certain testimony from the record.

" (3) Refusing to strike out testimony on motion of defendant's counsel.

" (4) Errors in charge of the court as given.

" (5) Errors in refusing to give certain requests which were asked for by defendant's counsel."

We will take these questions up seriatim:

1. Cross-examination of plaintiff. The only assignment of error relating to the denial of cross-examination of the plaintiff is assignment No. 1. The brief of the defendant's counsel states:

" The most important phase of this case, in our judgment, was the refusal of the court to allow a full and complete cross-examination of plaintiff upon the question of his connection with the Michaels Bros.' bill during all the stages of its progress, even up to the present time, and the action of the court in afterwards striking out testimony which had been admitted, and instructing the jury not to regard this testimony."

That is the only allusion to the subject. Assignment No. 1 raises the only question we can consider on this branch of the case. On cross-examination plaintiff was asked:

"*Q.* Do you remember, Mr. Smith, being employed by Dr. Yerex, in behalf of the village, to prosecute a case in this court, in justice's court, under a village ordinance?

"*A.* Yes, sir.

"*Q.* You were sworn upon a case afterwards that was brought against Dr. Yerex, as village president, sworn as a witness?

"*A.* Yes, sir.

"*Q.* Do you recall testifying on the trial of that case that in case where you appeared you did not care whether you were right or wrong as long as you got your money for it?

"*Mr. Halpin:* Object to that as incompetent.

"*The Court:* Does his statement refer to the plaintiff or to this transaction?

"*Mr. Halpin:* It is a transaction that has nothing to do with this at all; two or three years before this."

Re-direct examination:

" That was a case against a man named John Thick for

violating a village ordinance. That was two or three years before this time. Then an action was brought against Dr. Yerex for malicious prosecution.

"*The Court:* It may be stricken out.

"*Mr. Campbell:* We object to the ruling of the court for the reason that the articles complained of, and the declaration in the case alleges plaintiff's giving the village council and the officers thereof dishonest advice, in order to make money for himself, and we propose to show that plaintiff, himself, upon the witness stand in the case arising out of village matters, admitted that he did not care whether his advice was correct or not as long as he was paid for what he did.

"*The Court:* The record may show that when the employment took place by Mr. Smith looking to the employment in that case and this particular testimony you refer to, the court is unable to see how it is material in this case. (Exception for defendant)."

If we assume that the ruling of the learned circuit judge prevented the answer to the question put, which is not entirely clear, we agree with him that the question was immaterial to the issue and within the discretion of the trial judge.

2. Testimony stricken from the record. Assignment 5 is the only one raising this question. It is as follows:

"In striking from the record the testimony tending to show the employment of the plaintiff by Michaels Bros. in the suit by Michaels Bros. against the village trustees."

This refers to some testimony elicited upon cross-examination of the plaintiff that after the alleged libel suit was commenced he was employed by Mr. Michaels to collect his claim against the village trustees upon commission, which was admitted. The testimony was admitted upon the promise of counsel to connect it with the relations of plaintiff with Mr. Michaels before the libel suit was begun and while he was yet city attorney. This he failed to do, and the court struck it out. In this no error was committed. There was nothing in the testimony tending to support defendant's contention.

3. Refusing to strike out testimony. This relates to

evidence offered to prove a loss of business by plaintiff. A portion of the testimony was struck out. Smith testified that his business fell off after the publication complained of. This was proper evidence, and justified the refusal to strike out all evidence.

4. Errors in the charge. The defendant endeavored to justify the alleged libel by attempting to prove its truth. Upon some of the points raised, the judge might have told the jury that there was no evidence that it was true, and therefore, whatever he may have said about them was not injurious and need not be discussed, e. g., there was no proof justifying the claim that he was acting for Michaels against the city while he was city attorney. Again, he might properly have instructed the jury that ignorance of the statute in question was not such evidence of an ignorance of the law as would justify the language used by the defendant as to plaintiff's incompetency. Again, what was said about the mandamus proceeding was a proper criticism upon improper argument of counsel, which is within the province of the trial judge. What was said, left to the jury all of the legitimate defense upon the subject.

Assignment No. 7 relates to the charge on the subject of perjury in swearing to plaintiff's bill for service in the mandamus proceeding. The judge said:

" The claim of the plaintiff is that that language would carry to the ordinary reader of the paper a charge of perjury, and at first glance, and as I shall leave the case to you, you might possibly think that if the affidavit was false and that the bill was an illegal one, that it was perjury; but that does not necessarily follow from the bill being illegal. The bill may not have been a legal charge against the village of Imlay City, that is, not such a bill that the village was bound to pay or as a legal proposition, and it may have been such a bill that Mr. Smith could not enforce by suit against the village of Imlay City, and still Mr. Smith would not be guilty of perjury. Perjury (notice the language) is the willful making of a false statement or a false affidavit, knowing the same to be false. I emphasize the word 'knowing.' Now, Mr.

Smith may have supposed in good faith that the bill was a legal charge against the village, and if he did so believe, then it would not be perjury to swear to it, even if in truth and fact the village was not liable. Or if he were notified or told by the officers of the village to present the bill as a charge against the village, and that it would be paid so that the village might become liable in that way, then it would not, in my judgment, be perjury to swear that the bill was a claim against the village. So, gentlemen, you will bear that in mind, carefully considering whether it has been proven that he is guilty of perjury."

Error is assigned upon the last two sentences. The only possible view that would sustain the theory of perjury is that the plaintiff falsely stated that the services were performed for the village, as there is nothing else in the affidavit upon which it could be based, under the proof. That was not the point brought out in the instruction complained of. If, however, the instruction would otherwise be open to the criticism of defendant's counsel, it is not, in view of the following instruction which was given:

"I charge you further that if you find that the plaintiff, at the time he made the affidavit verifying his bill of $69.87, knew that the affidavit was false, and that the services mentioned therein were not rendered for or on behalf of the village of Imlay City, then the plaintiff was guilty of perjury, and was endeavoring by fraudulent means to obtain $69.87 which did not belong to him, and was attempting to loot the village treasury, and was using his position as village attorney as a means of exacting illegal fees from the village of Imlay City."

5. Requests refused. Counsel have not discussed this branch of the case in their brief, and we might decline to consider the requests to charge. We have examined them, and think that they were covered by the general charge, except the second, which there was no error in refusing. We find no error, and the judgment is affirmed.

MONTGOMERY, OSTRANDER, and CARPENTER, JJ., concurred. MCALVAY, J., concurred in the result.